IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

EMANUEL HART                                                    PETITIONER
ADC #111502

V.                                    NO. 5:02CV00279 JWC

LARRY NORRIS, Director,                                        RESPONDENT
Arkansas Department of Correction


MEMORANDUM OPINION AND ORDER

Emanuel Hart, an Arkansas Department of Correction inmate, brings this petition
for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket entry #1), and Respondent
has filed a response (docket entry #6).  For the reasons that follow, the petition must be
dismissed.[1]


Background

Following a jury trial in September 1997 in the Circuit Court of Pulaski County,
Arkansas, Petitioner was convicted of first degree murder and two counts of committing a
terroristic act.  He was sentenced to a total of thirty-five years of imprisonment.  (R. 24-
29.)[2]  In a direct appeal, he raised one claim: that the trial court erred in allowing Derrick
Smith to testify that Petitioner shot at a different vehicle shortly before shooting at the
victims' vehicle.  (Resp't Ex. A.)  Finding no error, the Arkansas Court of Appeals affirmed.
Hart v. State, 987 S.W.2d 759 (Ark. Ct. App. 1999) (Hart I).

---

[1]The parties have consented to proceed before the undersigned United States Magistrate Judge
pursuant to 28 U.S.C. § 636(c) (docket entry #8).

[2]All references to the record are to the record of Petitioner's state criminal proceedings, submitted
at the Court's request as Resp't Ex. D to docket entry #12.  Respondent's other exhibits are attached to docket
entry #6.

Petitioner then filed in the state circuit court a timely petition for post-conviction relief pursuant to Ark. R. Crim. P. 37, alleging that: (1) his trial counsel was ineffective for failing to properly prepare for trial or investigate the facts of the case and the case law; (2) his trial counsel was ineffective for failing to call Kenneth McArthur as a witness; (3) his trial counsel was ineffective for failing to object to the trial court's refusal to accept a negotiated plea the morning of trial; (4) his trial counsel was ineffective for failing to request a limiting instruction with regard to the testimony of Mr. Stewart; and (5) his judgment and commitment order erroneously stated the sentence actually imposed.  Following a hearing, the circuit court found that Petitioner was entitled to entry of an amended judgment and commitment order to reflect that his sentences were to be served concurrently instead of consecutively, resulting in an imprisonment term of twenty-five years.  The other claims were denied as without merit.  State v. Hart, No. CR 96-2104 (Pulaski Co. Cir. Ct. Oct. 29, 1999) (Resp't Ex. B).  The decision was affirmed on appeal.  Hart v. State, No. CR 99-1408, 2001 WL 1081411 (Ark. Sup. Ct. Sept. 13, 2001) (Resp't Ex. C) (Hart II).  There is no evidence or allegation that Petitioner sought any further relief in state court.

Petitioner now brings this federal habeas petition, advancing the following claims:

     1.     He was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to object to the trial court's rejection of his guilty plea; and

     2.     The introduction of evidence of other crimes violated his rights to due process and a fair trial under the United States Constitution.

Respondent concedes that Petitioner is in his custody and has exhausted all nonfutile state remedies, see 28 U.S.C. § 2254(a) & (b), but asserts that this Court should

defer to the state courts' adverse rulings on his two claims pursuant to § 2254(d). Petitioner has replied (docket entry #9).

<u>Ground 1</u>

First, Petitioner contends that his trial counsel was ineffective for failing to object to the trial court's refusal to consider and accept a negotiated plea of guilty on the day of trial. He says an objection could have been made on two grounds: that the refusal to accept the plea was an abuse of discretion, and that the trial court's basis for rejection constituted a prohibited local court rule.

Respondent contends that the Arkansas Supreme Court's resolution of the issue is entitled to deference under the standards of 28 U.S.C. § 2254(d).

In the interests of finality and federalism, a federal habeas court is constrained by statute to exercise only a "limited and deferential review of underlying state court decisions." <u>Whitehead v. Dormire</u>, 340 F.3d 532, 536 (8th Cir. 2003). Thus, where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief for the same claim in only three limited situations: where the state court adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); **or** (2) "involved an unreasonable application" of clearly established federal law, <u>id.</u>; **or** (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," <u>id.</u> § 2254(d)(2).

A state court decision is "contrary to" federal law under § 2254(d)(1) if it applies a rule that contradicts the controlling Supreme Court authority or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a Supreme

3

Court case, but nonetheless reaches a different result. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court's decision involves an "unreasonable application" of federal law under § 2254(d)(1) if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The habeas court must "ask whether the state court's application of clearly established federal law was objectively unreasonable," and a state adjudication may not be found unreasonable "simply because [the federal habeas] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 409, 411.

Pursuant to well-established United States Supreme Court law, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness" and (2) that counsel's deficient performance prejudiced the defendant. <u>Id.</u> at 687-88. The prejudice element need not be considered if the performance element has not been satisfied, and vice versa. <u>Id.</u> at 697. An attorney's performance is deficient only when it is "outside the wide range of professionally competent assistance," and the defendant must overcome a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. The defendant is prejudiced by the inferior performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. <u>Id.</u> In making a

4

determination on a claim of ineffectiveness, the totality of the evidence before the judge or jury must be considered.  Id. at 695.

In rejecting Petitioner's claim, the Arkansas Supreme Court cited Strickland and state court decisions, setting forth legal principles consistent with the above-stated law. The court then stated:

> Ineffective assistance of counsel cannot be established merely by showing that an error was made by counsel or by revealing that a failure to object prevented an issue from being addressed on appeal.  Thomas [v. State], 954 S.W.2d 255, 258 [(Ark.] 1997)] (citing Huls v. State, 785 S.W.2d 467 ([Ark.] 1990)).  In making a determination on a claim of ineffectiveness, we consider the totality of the evidence before the factfinder, and we will not reverse the denial of post-conviction relief unless the lower court's findings are clearly against the preponderance of the evidence.  Noel [v. State], 26 S.W.3d [123,] 125 [(Ark. 2000)].

Hart II, supra at *1 (parallel citations omitted).  This, too, is consistent with the principles enunciated in Strickland.  See Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (it is not necessary for the state court to cite, or even be aware of, applicable United States Supreme Court opinions, as long as "neither the reasoning nor the result of the state-court decision contradicts them").

The Arkansas Supreme Court then applied the stated law regarding ineffective-assistance claims as follows:

> A defendant has no right to unilaterally waive a jury trial.  State v. Singleton, 13 S.W.3d 584, 587 ([Ark.] 2000).  As we have explained, under Ark. R. Crim. P. 31.1, criminal cases which require a trial by jury must be so tried unless waived by the defendant, assented to by the prosecutor, and approved by the court.  State v. Vasquez-Aerreola, 940 S.W.2d 451, 455 ([Ark.] 1997) (quoting Fretwell v. State, 708 S.W.2d 630 ([Ark.] 1986)).  The first two requirements are mandatory before the court has any discretion in the matter.  Id.  The trial court, however, decides whether it will accept the defendant's guilty plea in accordance with Ark. R. Crim. P. 24.4 to 24.6. Williams v. State, 930 S.W.2d 297, 302 ([Ark.] 1996).  A defendant does not have an absolute right to plead guilty.  Id.

Even if we were to hold that his trial counsel's performance was
deficient, we find no basis for holding that appellant was prejudiced.  See,
e.g., Qualls v. State, 812 S.W.2d 681, 684 ([Ark.]1991).  The trial court
possessed the discretion to refuse to accept appellant's guilty plea for any
reason or no reason at all.  Thus, even if an objection by appellant's counsel
at the time provided a basis for reversible error on direct appeal, he has not
shown the trial court would have accepted his plea if it was forced to
reconsider the issue upon remand.  Appellant's argument is nothing more
than a contention that the result might possibly have been different.  Jones
v. State, 8 S.W.3d 482, 488-89 ([Ark.] 2000) (supplemental opinion denying
rehearing).  This is insufficient under Strickland.  Id.  The circuit court did not
clearly err in denying appellant's petition.

Hart II, supra at *2 (parallel citations omitted).

Petitioner does not contend that the law applied by the Arkansas Supreme Court
is contrary to Strickland or that the United States Supreme Court has ever addressed a
case with facts that are materially indistinguishable from those involved here.  He does,
however, assert that the state court decision is an unreasonable application of Strickland's
standard to the facts and that the decision is contrary to United States Supreme Court law
in that it failed to mention or apply Santobello v. New York, 404 U.S. 257 (1971).  In
Santobello, the Supreme Court stated: "There is, of course, no absolute right to have a
guilty plea accepted.  A court may reject a plea in exercise of sound judicial discretion."
Id. at 262 (citing Lynch v. Overholser, 369 U.S. 705, 719 (1962)).  According to Petitioner,
the Arkansas Supreme Court's holding that the trial court possesses discretion to refuse
to accept a guilty plea "for any reason or no reason at all" is contrary to Santobello.

The Arkansas Supreme Court's decision was neither contrary to nor an
unreasonable application of either Strickland or Santobello.

First, this Court agrees with the state courts that counsel's conduct was not deficient
under Strickland's first component.  According to the record, Petitioner was first tried on the

charges at issue in January 1997, resulting in a mistrial.  Robert Scull represented him in that trial.  Mr. Scull withdrew from the case in May 1997, (R. 18-19), but undertook Petitioner's representation again about one week before the second trial date of September 3, 1997.  On the morning of trial, Mr. Scull and the trial court engaged in the following colloquy:

> MR. SCULL: Basically what the situation is, is Mr. Hart really desires to enter a plea of guilty at this time.  What I would tell the Court is this; I am in a very unique position.  I'm not even registered with the Court as counsel in this particular matter as the Court knows.  Mr. Brown [Petitioner's previous attorney] had the responsibility and from what I understand I came into this case Friday, last Friday.   Mr. Hart did not have an offer effectively communicated to him, no disrespect to Mr. Brown, but what Mr. Hart is telling me is that Mr. Brown told him that there was a possible offer and that he would explore it further.

> I don't think that offer was ever firmed up even though Mr. Johnson [the prosecutor] tried to get in touch with Mr. Brown on several occasions. I know it's not the Court's usual practice to even entertain a guilty plea on the day of trial, but I'm asking the Court to make some concessions if possible –

> THE COURT: Well, I don't do that anymore.  That's called my T-Rex Rule.  Terry Raney burned two of my jury panels and from then on I decided I was never going to do it again.

> MR. SCULL: And I can fully understand it, Your Honor, if that had been me with the responsibility or if it was [the previous attorney] standing here I could understand it, but since I'm here with it and I've only had since Friday to communicate that to him, I'm asking the Court to just, maybe this one time.

> THE COURT: Well, I appreciate and I've known you, I guess forever, in fact, since you were in law school and worked for me.

> MR. SCULL: Correct.

> THE COURT: I just don't want to do that.

> MR. SCULL: I understand, Your Honor, that the Court wouldn't want to do it and that it looks as though the Court would be making a special

concession, but I – more so, Your Honor, than any particular favor, I guess, to me, I'm saying I wish that the Court would look at it in fairness to the Defendant. I didn't have a full day Friday. Monday was a holiday. We met Sunday and I feel that we're prepared to go to trial if that be the case, but I think in all fairness to the Defendant that he should have had some time to at least consider this.

THE COURT: Well, in this case he was arraigned September of '96. We had a trial on January 24th of '97. There was a hung jury, a mistrial, and it was set the first time, I think, to May 28th and then it got –

MR. SCULL: That's probably correct, Your Honor, but I have not been involved in any of that.

THE COURT: – passed and well, I understand that, but I just have decided I guess some time ago and after I guess I had Terry Raney really burned two of my juries that I would never take another plea of guilty with juries sitting out there. I'm going to hold firm to it. I just don't think that's the way to handle matters in the courthouse. I just think that once I've got the jury here that I'm not going to take a plea.

I understand your position and I know you've worked the best you can for your client, but we tried this once, we've had it a long time and we're going to trial today. I mean it would be easier on me and all those people out there and we could all go home, but I just don't think that's right so I'm going to hold firm.

MR. SCULL: Well, the other thing that I might add, Your Honor, the State is not a part of this motion, but I think it's all upon the Court and my understanding is that the State would not object to it if the Court would allow it.

THE COURT: I probably wouldn't.

MR. SCULL: That's all I have, Judge.

(R. 44-47.)

Counsel was obviously aware of the trial judge's policy of not accepting guilty pleas on the day of trial, but he made the request anyway. When the judge indicated that he would adhere to his policy, counsel asked to make an exception due to his late entry as Petitioner's attorney. When the judge said he did not want to accept the plea, counsel

asked again if the court would consider an exception out of fairness to Petitioner.  When the judge again stated he would "hold firm" to his policy, counsel tried once more, saying that the state had no objection to entry of a plea.  The court again declined.

Counsel thus made four attempts to persuade the trial court to deviate from its policy.  This represents a diligent effort to convince the court to accept Petitioner's guilty plea even though counsel knew there was little chance of success.  The Court cannot say that this was outside the range of professionally competent assistance.

Furthermore, the Court agrees that, even if counsel had further objected and preserved the issue for appellate review, Petitioner has not shown a reasonable probability that the outcome would have been any different, failing under Strickland's prejudice component.  Although the trial court allowed Petitioner's counsel to argue his position, it is clear that the court had no intention of deviating from its policy under the circumstances presented.  Likewise, the view of the Arkansas Supreme Court on the issue is obvious from its decision in Petitioner's post-conviction appeal and there is no indication – much less a reasonable probability – that it would have reversed or remanded had counsel preserved the question for direct appeal.

Petitioner contends that counsel should have argued that the trial court's policy constituted a "local rule," which is prohibited under the current Arkansas Rules of Civil Procedure.  See In re Changes to Arkansas Rules of Civil Procedure and Arkansas Rules of Appellate Procedure, Abolishment of Uniform Rules for Circuit and Chancery Courts, and Publication of Administrative Orders, 742 S.W.2d 551 (Ark. 1987).  This argument is foreclosed by the state post-conviction court's determination, upon being presented with this particular argument, that the trial court's reason for rejecting Petitioner's plea was not

an abuse of discretion.  (Resp't Ex. B, at 4-5.)  The state supreme court affirmed, without discussing the specific argument regarding local rules.[3]  Whether the trial court's action violated state procedural rules is, of course, a matter of state law, which this Court cannot review.  See Ford v. Norris, 364 F.3d 916, 918-19 (8th Cir. 2004).  Given the state post-conviction courts' rejection of this state-law argument, there is no basis for finding that counsel was deficient under Strickland for failing to pursue it in the trial court.  Id. at 919.

Therefore, the Arkansas Supreme Court's ruling was not contrary to or an unreasonable application of Strickland.

Moreover, the Court cannot agree with Petitioner that the decision was contrary to Santobello.[4]  Petitioner cites no United States Supreme Court decision, and the Court is aware of none, which would place the trial court's actions outside the limits of "sound judicial discretion" as contemplated by Santobello.  Petitioner points to nothing in Santobello, or any other case, which would prevent a trial court from adopting a policy of refusing to accept a guilty plea on the day of trial.  In fact, many courts have recognized the benefit of a court-imposed plea deadline as a case management tool.  As one court explained:

> [I]t is important for our legal system to be effectively and efficiently administered.  Consequently, the efficient processing of a case has become an important element in the administration of our courts, and a plea deadline in criminal cases is one method commonly utilized by courts to help manage

---

[3]The record does not show whether it was specifically raised on appeal.

[4]A federal habeas claim that counsel was ineffective for failing to raise a Santobello argument does not necessarily constitute an independent claim that the trial court violated Santobello by rejecting Petitioner's plea.  See Ford, 364 F.3d at 918.  Because Petitioner has specifically alleged that the Arkansas Supreme Court's decision was contrary to Santobello (docket entry #1, pp. 8-9; docket entry #9, p.2), and because Respondent does not contend that no independent claim exists, the Court has addressed whether Santobello could entitle Petitioner to habeas relief.

increasing demands on the criminal dockets.  Deadlines are a way to help distinguish those cases that do not ultimately need a trial from those cases that require a trial, at a point in the process to help ensure that the time and resources involved in the preparation for trial are not devoted to those cases that will ultimately be resolved by a guilty plea.  A plea deadline becomes a cutoff point for administrative purposes, and enables the court to direct its trial resources to those cases in which the parties do not reach a plea agreement by a certain date.  This is not only important to the efficient operation of our criminal docket, but also to the overall operation of our court system.    Criminal  cases  are  given  priority  over  most  civil  cases. Consequently, civil trials are delayed when criminal cases are scheduled for trial but ultimately settled on the morning of trial by a plea bargain.

State v. Hager, 630 N.W.2d 828, 835  (Iowa 2001).

While many courts have approved strict enforcement of such plea deadlines, see United States v. Gamboa, 166 F.3d 1327, 1331 (11th Cir. 1999); others have held that it is an abuse of discretion for a trial court to reject a plea for the sole reason that it is made after the expiration of a plea deadline.  See State v. Brown, 689 N.W.2d 347, 351-53 (Neb. 2004) (collecting cases both ways but holding that, to prevent arbitrary rejection of untimely pleas, trial court must provide adequate notice of deadline and must permit exceptions for good cause); Hager, 630 N.W.2d at 833-37 (collecting cases both ways, but concluding that missed plea deadline alone will not support refusal to accept plea agreement).

Whether strict enforcement of a plea deadline would fall outside the limits of the "sound judicial discretion" granted to trial courts in their authority to reject guilty pleas is, therefore, a question that has not been answered by the United States Supreme Court and which has divided lower courts.  The divergent opinions on this issue indicate that the state court here did not apply a rule that was clearly incompatible with Santobello.  Williams v. Bowersox, 340 F.3d 667, 672 (8th Cir. 2003).

In any event, contrary to Petitioner's suggestion, it does not appear that the trial court based its decision solely on rigid adherence to its policy regarding untimely pleas. Petitioner's counsel obviously was aware of the trial court's policy, yet the court allowed counsel to argue the question four times.   Not only was the court unwilling to inconvenience the jurors who were waiting, he also noted that Petitioner had been arraigned a year earlier, the case had already been tried once (by the same attorney), ending in a mistrial, and that it had previously been set for trial four months earlier.  The state was ready to proceed, with ten witnesses.  Under these circumstances, the Court cannot say that the trial court failed to exercise sound discretion in rejecting Petitioner's plea.

The Court, therefore, finds that the Arkansas Supreme Court's decision rejecting Petitioner's ineffective-assistance claim was not contrary to or an unreasonable application of any controlling United States Supreme Court decision, nor was it based on an unreasonable determination of facts in light of the trial record.

Ground 1 must be dismissed.


<u>Ground 2</u>

Next, Petitioner contends that the trial court erred in admitting evidence of other bad acts, specifically Derrick Smith's testimony that he observed Petitioner shooting at a different vehicle shortly before shooting at the victims' vehicle.  He argues that admitting Mr. Smith's testimony violated his right to due process and a fair trial under the United States Constitution.  Respondent asserts that this Court is bound by the Arkansas Court of Appeals' rejection of this claim in Petitioner's direct appeal.

The Arkansas Court of Appeals summarized the relevant facts as follows:

> The evidence presented at trial showed that on February 18, 1996, appellant, Johnny Stephenson, Derrick Stewart, and Kenneth McArthur were out together at a local nightclub in North Little Rock.  While at the club, Stephenson purportedly got into an argument with James Nichols, who was accompanied by Donian Jarrett and Shedric Sabb.  Shortly thereafter, both of these groups departed in their vehicles and entered onto Interstate 30. Stephenson testified that when appellant noticed the red Hyundai driven by Nichols, appellant hollered, "There they go [sic ]" and fired three shots.  This testimony was corroborated by Derrick Stewart, who testified that as the red Hyundai began to exit the interstate, appellant rolled down his window and fired four or five shots at the car.  James Nichols testified that as he and his friends exited the interstate, no other vehicles were behind them except a gold Mitsubishi Gallant.  Nichols further testified that although he did not hear gunshots at the time of the shooting, he did realize that Shedric Sabb had been shot while sitting in the back seat.  Sabb was later pronounced dead from a gunshot wound.
>
> In a police statement given on February 20, 1996, appellant admitted that he was riding in a gold Mitsubishi Gallant on the morning of February 18, 1996, and that he had fired two shots at a red car that was exiting the interstate because "they [the occupants of the red car] had pissed me off by circling around us, playing with us."  Appellant testified that he used a black automatic .380 caliber pistol in self-defense.  Ronald Andrejack, a firearm and toolmark examiner with the Arkansas State Crime Laboratory, testified that the three casings found near the scene of the accident were consistent with having been fired from a .9mm Glock semiautomatic handgun, which included bullet components of the .380 caliber class.

Hart I, 987 S.W.2d at 760-61.

Petitioner does not dispute this summation of the testimony; therefore, it is presumed correct.  See 28 U.S.C. § 2254(e)(1) (habeas court presumes any factual findings made by the state court to be correct unless rebutted by clear and convincing evidence).  Furthermore, this Court has reviewed the transcript of Petitioner's state court trial and has determined that this summation is reasonable in light of the evidence presented at trial.  See id. § 2254(d)(2).

13

Before trial, Petitioner moved to exclude Mr. Stewart's anticipated testimony that Petitioner earlier had been shooting at a different car in the nightclub parking lot, as prohibited Ark. R. Evid. R. 404(b) evidence that would be more prejudicial than probative. The trial court allowed the testimony, (R. 49-50), and the Arkansas Court of Appeals affirmed on this point, as follows:

> The admission or rejection of evidence under Ark. R. Evid. 404(b) is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Brown v. State, 972 S.W.2d 956 ([Ark. Ct. App.] 1998).  Arkansas Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." If the introduction of testimony of other crimes, wrongs, or acts is independently relevant to the main issue, i.e., relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal, then evidence of that conduct may be admissible with a cautionary instruction by the court.  Regalado v. State, 961 S.W.2d 739 ([Ark.] 1998).  Thus, if the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred and is not introduced merely to prove bad character, it will not be excluded.  Lindsey v. State, 890 S.W.2d 584 ([Ark.] 1994).  However, such relevant evidence may be excluded under Ark. R. Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice.  Id.

> Here, we first note that appellant failed to ask for a cautionary instruction that the purpose of Derrick Stewart's testimony was not to show that he had a criminal propensity for shooting weapons at moving cars. Regardless of the fact the appellant did not ask for a limiting instruction, we conclude that Stewart's testimony was relevant in showing that appellant fired shots at the victims with an absence of mistake or accident.  Appellant acknowledged in his police statement that he had ready access to his weapon and that he had shot at the victims' car because he was angry at the victims shortly before the incident.  There was also testimony that the casings found near the crime scene were consistent with the gun that appellant was found to have possessed and that after the shooting, appellant wanted to disassemble the gold Mitsubishi. Further, Stewart's testimony was part of the *res gestae* of the case by providing corroborating evidence that appellant had possession of a gun before the present shooting, even though appellant had testified that Kenneth McArthur was the actual person in

14

possession of the weapon.  We have previously stated that all of the circumstances of a particular crime are part of the *res gestae* of the crime, and all of the circumstances connected with a particular crime may be shown to put the jury in possession of the entire transaction.  Hunter v. State, 970 S.W.2d 323 ([Ark.] 1998).

    The underlying facts in this case show that appellant admitted to shooting at the victims out of anger, in spite of testimony that the victims did nothing to provoke him.  Stephenson testified that when appellant observed the victims' car, he shot at the car a multiple number of times.  Stewart testified that he first noticed that appellant had a weapon when appellant shot at and ran behind a Cadillac in the parking lot of the Cameo club, and that shortly after leaving the club and exiting onto the interstate, appellant began shooting after a red Hyundai stating, "I'm tired of them [sic ] young punks."  There was also evidence from one of the victims that the gold Gallant, in which appellant was a passenger, was at the nightclub earlier that evening and was the only car on the interstate at the time Shedric Sabb was fatally shot.  In appellant's own testimony, he stated that "on page 10 of my [police] statement, I said that what really made me shoot is that it pissed me off by their circling around and playing with us.  I was referring then to the white Bronco and the Cadillac." Coincidentally, appellant was referring to the victims' car when he stated to police, "well what really made me shoot is when they was blocking, you know.  They should have went on--'cause I didn't know what they was gone do.  They had pissed me off by kept [sic ] circling around us, playing with us."  Further, there was evidence that appellant suggested stripping down the gold Gallant after he learned that one of the victims had died.  When the evidence of guilt is overwhelming and the error is slight, the appellate court can declare the error harmless and affirm. Brown, supra.

    Although the dissent feels that Rowdean v. State, 655 S.W.2d 413 ([Ark.] 1983), and Lincoln v. State, 670 S.W.2d 819 ([Ark. Ct. App.] 1984), are controlling, we note that this case is distinguishable. In both Rowdean and Lincoln, evidence was presented that the appellant had either pulled a gun or waved a gun around another person shortly before the shootings that occurred in their present convictions.  However, in this case, there was evidence that appellant had actually shot at a Cadillac in the parking lot of the Cameo club and within a short period of time, shot at the victims involved in the present case.  In addition, appellant admitted that he was angry at the occupants of the Cadillac when he shot at them.  Although appellant shot at two different vehicles, his conduct in the first incident was relevant in showing an absence of mistake or accident for the same type of conduct in the present incident.  Therefore, under these circumstances, we cannot say that appellant was unfairly prejudiced by the testimony of Derrick Stewart.

15

Hart I, 987 S.W.2d at 761-62 (parallel citations omitted).[5]

It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A federal habeas court is thus prohibited from reviewing whether "other crimes" evidence was properly admitted by the state trial court pursuant to Ark. R. Evid. 404(b), which is simply a matter of state evidentiary law. Sera v. Norris, 400 F.3d 538, 547 n.8 (8th Cir. 2005), pet. for cert. filed, No. 05-5725 (U.S. Aug. 8, 2005). Instead, the admission of evidence at a state trial will form the basis for federal habeas relief only when the evidentiary ruling was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Osborne v. Purkett, 411 F.3d 911, 917 (8th Cir. 2005).

The United States Supreme Court has "very narrowly" defined the category of infractions that violate the due process test of fundamental fairness. Dowling v. United States, 493 U.S. 342, 352 (1990). The Supreme Court has thus declined to hold that evidence of other crimes or wrongs is so extremely unfair that its admission violates fundamental conceptions of justice or the due process test. Estelle, 502 U.S. at 75 & n.5 (stating that Supreme Court was expressing no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime); Spencer v. Texas, 385 U.S. 554, 563-64 (1967) (rejecting the argument that due process requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served). See Bugh v. Mitchell, 329 F.3d 496, 512-13 (6th Cir.), cert. denied, 540 U.S. 930 (2003).

---

[5]Again, the recited facts are presumed to be correct and are not unreasonable in light of the trial transcript. 28 U.S.C. §§ 2254(d)(2), (e)(1).

Thus, there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting propensity evidence in the form of other bad acts evidence.

In reviewing Petitioner's claim, the Arkansas Court of Appeals recognized that evidence of uncharged crimes or wrongs is inadmissible to show the propensity of a defendant to commit the charge for which he is on trial but that it may be relevant and admissible for other purposes, as long as the evidence's probative value outweighs its potential prejudicial effect.  This standard for admissibility is the same as that used in the federal courts and is in accord with United States Supreme Court precedent.  Osborne, 411 F.3d at 917; see Fed. R. Evid. 403, 404(b); Huddleston v. United States, 485 U.S. 681, 685-88 (1988).

Furthermore, it is clear that an evidentiary error cannot "fatally infect" a trial so as to violate due process where there is overwhelming other evidence of guilt.  Harris v. Bowersox, 184 F.3d 744, 755 (8th Cir. 1999); Snell v. Lockhart, 14 F.3d 1289, 1299 (8th Cir. 1994).  Here, as pointed out by the Arkansas Court of Appeals, Petitioner admitted to shooting at the victims out of anger with a .380 caliber pistol.  Two other occupants of the gold Gallant in which Petitioner was riding testified that he shot at the red Hyundai.  Two of the victims testified that there were no vehicles other than the Gallant and their Hyundai on the interstate at the time of the shooting.  There was definitive evidence that one of the Hyundai's occupants was killed by a .380 caliber bullet, and casings consistent with a .380 caliber pistol were found at the scene of the shooting.  Petitioner testified that, later on the same day of the shooting, he returned the gun to the person from whom he had bought it.  Another witness testified that Petitioner suggested stripping down the Gallant after learning

that one of the victims had died.  This represents overwhelming evidence that Petitioner committed the charged offenses, even without Mr. Smith's testimony about the prior shooting.

Additionally, the fundamental fairness of Petitioner's trial was safeguarded by the trial court's utilization of Ark. R. Evid. 403's weighing analysis.  Petitioner says the court also should have given a cautionary instruction, even though one was not requested by trial counsel.  However, a trial court's failure to give a sua sponte curative instruction does not, by itself, amount to a constitutional violation.  Phea v. Benson, 95 F.3d 660, 662 (8th Cir. 1996).

Under these circumstances, the Arkansas Court of Appeals' rejection of Petitioner's claim regarding "other crimes" evidence was not contrary to, or an unreasonable application of, any United States Supreme Court precedent under § 2254(d)(1), nor was it based on an unreasonable determination of the facts in light of the trial record.

Ground 2 must be dismissed.


## Conclusion

This 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #1) is hereby dismissed in its entirety, with prejudice.

IT IS SO ORDERED this 31st day of August, 2005.


_____
UNITED STATES MAGISTRATE JUDGE